United States District Court
Southern District of Texas
ENTERED
JUL - 1 2014
David J. Bradley, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL NO. B-14-122-1 |
| | § | |
| MIGUEL RISCAJCHE-SIQUINA | § | |

## MEMORANDUM OPINION AND ORDER

Miguel Riscajche-Siquina (hereinafter "Riscajche-Siquina" or "Defendant") pleaded guilty to illegal reentry into the United States after having been convicted of a felony and deported in violation of 8 U.S.C. § 1326(a) and (b)(1). The Pre-Sentence Investigation Report (hereinafter "PSI") assigned Riscajche-Siquina a base offense level of eight and recommended a sixteen-level enhancement due to his prior 2006 conviction for two counts of First Degree Burglary of an Occupied Dwelling in Washington County, Oregon—an enumerated offense under Section 2L1.2(b)(1)(A)(ii) of the United States Sentencing Guidelines (hereinafter "U.S.S.G." or "Guidelines").

The Oregon statute under which Defendant was indicted criminalizes the following conduct:

> [A] person commits the crime of burglary . . . if the person enters or remains in a building with the intent to commit a crime therein.

Or. Rev. Stat. § 164.215 (2014). A person commits first degree burglary if the building in question is a dwelling. Id. § 164.225

The Oregon Circuit Court Judgment of Conviction and Sentence indicates that Defendant had been "indicted, arraigned, tried and found guilty by Court verdict of the crimes of Burglary in the First Degree of an occupied dwelling (Class A Felony, crime seriousness, criminal history

H) in Counts 1 and 2." Defendant concedes that in normal parlance, a conviction for burglary of a habitation would merit the sixteen-level enhancement, but claims that the Oregon statute under which he was convicted criminalizes conduct far beyond that contemplated by the enumerated offense "burglary of a dwelling" found in the Guidelines.

The Commentary to Section 2L1.2 of the Guidelines defines a crime of violence as follows:

> "Crime of Violence" means any of the following offenses under federal, state, or local law: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, <u>burglary of a dwelling</u>, or any other offense under federal, state, or local law that has an element the use, attempted, use, or threatened use of physical force against the person of another.

U.S. Sentencing Guidelines Manual § 2L1.2 Commentary, Application Note 1(B)iii (emphasis added).

Riscajche-Siquina's objection focuses on the fact that the Oregon statute criminalizes "remaining in" a dwelling with the intent to commit a crime. He argues that the generic, contemporary meaning of burglary of a habitation only contemplates that one must "<u>enter</u> a building unlawfully with the intent to commit a crime." Oregon's law not only criminalizes entering with the intent to commit a crime, but also criminalizes an act if one "remains unlawfully in a [dwelling] with the intent to commit a crime therein." Since the judicial documents that memorialize Defendant's conviction do not specifically which prong (entering or remaining) of which he was guilty, Defendant contends that the Court must presume that it was the "remaining" prong, which is conduct outside of that encompassed by the U.S.S.G. The Court agrees that it must make this presumption, but does not agree that this offense falls outside the Guidelines.

For support, Defendant directs this Court to the Model Penal Code. The Model Penal Code, as Defendant points out, does not criminalize remaining in a dwelling. It only defines burglary to include one who "enters a building or occupied structure . . . with the intent to commit a crime therein." Model Penal Code § 221.1. Thus, the question is easily framed: Does the generic, contemporary meaning of "burglary of habitation" include remaining in a habitation with the intent to commit a crime? This Court has not found a Fifth Circuit case that has directly answered this question. As noted, the Defendant correctly cites to the Court the fact that the Model Penal Code does not criminalize "remaining." If the Model Penal Code was the ultimate or only arbiter of the meaning of the Guidelines, then the Court would simply grant the objection. The Fifth Circuit has not made the analysis the Court must undertake under the categorical approach that easy.

The categorical approach applies to determine whether a prior conviction triggers a Guideline enhancement. See Descamps v. United States, ___ U.S. ___, 133 S. Ct. 2276, 2281 (2013) reh'g denied, 134 S. Ct. 41 (U.S. 2013); Taylor v. United States, 495 U.S. 575, 600–02 (1990). Under this approach, a court "looks to the elements of [the] prior offense, rather than to the facts underlying the conviction . . . ." United States v. Henao-Melo, 591 F.3d 798, 802 (5th Cir. 2009) (quoting United States v. Garza-Lopez, 410 F.3d 268, 273 (5th Cir. 2005)). Analyzing the elements of the prior offense may also involve examining the statutory definitions. See Shepard v. United States, 544 U.S. 13, 16 (2005).

"In a 'narrow range of cases,' however, a district court may look beyond the elements of the offense when making such a determination." United States v. Garza-Lopez, 410 F.3d 268, 273 (5th Cir. 2005) (quoting Taylor, 495 U.S. at 602)). This "modified categorical approach" is appropriate when the underlying statute is a "divisible statute"—meaning that it disjunctively prohibits multiple crimes. Descamps, 133 S. Ct. at 2281. The modified categorical approach

3

permits courts to examine the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." United States v. Herrera-Escobedo, 440 F. App'x 365, 367 (5th Cir. 2011) (quoting Shepard v. United States, 544 U.S. 13, 16 (2005)). Both parties agree that the Oregon statute disjunctively criminalizes two different means by which one can violate the law. Therefore, the statute is divisible and the modified categorical approach is appropriate.

A prior offense triggers a sentencing enhancement "if the statute's elements are the same as, or narrower than, those of the generic offense." Descamps, 133 S. Ct. at 2281. In examining whether a prior offense is sufficiently similar to the Guidelines' drug trafficking offense, the Fifth Circuit has previously examined whether the two offenses were "obviously different." See United States v. Palacios-Quinonez, 431 F.3d 471, 474 (5th Cir. 2005) (holding that the purchase of cocaine for the purpose of sale is not obviously different from possession with the intent to distribute cocaine). Therefore, the issue is whether Defendant's prior Oregon conviction for First Degree Burglary of an Occupied Dwelling comports with terms of the Guidelines' "burglary of a dwelling" enumerated offense.

The Fifth Circuit has divided the analysis that a court should undertake into two paths: one for common law crimes and another for statutory (non-common law) crimes. United States v. Rodriguez, 711 F.3d 541 (5th Cir. 2013) (en banc) cert. denied, 134 S. Ct. 512 (2013). To analyze the Guidelines' non-common law crime of violence enumerated offenses, the Fifth Circuit applies a "plain meaning" approach. Id. at 552. This plain meaning approach involves consulting "legal and other well-accepted dictionaries" to "derive [the offense's] 'generic, contemporary meaning' from its common usage." Id. When examining whether an enumerated crime of violence comports with the underlying prior offense, the Fifth Circuit has held that a "slight imprecision" between the underlying offense and its generic, contemporary meaning does

4

not remove the underlying offense from the sentencing enhancement. See United States v. Rojas-Gutierrez, 510 F.3d 545, 549 (5th Cir. 2007) ("Even if the fit between the enumerated offense . . . and the ordinary, contemporary, and common meaning . . . may not be precise in each and every way, slight imprecision would not preclude our finding a sufficient equivalence.").

As for common law crimes, the Fifth Circuit in Rodriguez explicitly left "the mechanics of how we determine the 'generic, contemporary meaning' of common-law offense categories for another day." Rodriguez, 711 F.3d at 552 n.17. To date, however, the Fifth Circuit has applied the pre-Rodriguez precedent to analyzing common law offenses. See United States v. Pascacio-Rodriguez, No. 12-40264, 2014 WL1407541, at *4 (5th Cir. Apr. 11, 2014). This precedent "applies a common sense approach based on the generic, contemporary meaning" of the offense. United States v. Herrera, 647 F.3d 172, 176 (5th Cir. 2011) (quoting United States v. Hernandez-Galvan, 632 F.3d 192, 196 (5th Cir. 2011)) (internal quotation marks omitted); see also Pascacio-Rodriguez, 2014 WL at *4 (applying the common sense approach to a common law offense). This "common sense approach" involves examining sources such as the Model Penal Code, criminal law treatises, legal dictionaries, and other states' laws. See, e.g., United States v. Martinez-Flores, 720 F.3d 293, 296 (5th Cir. 2013) (holding that New Jersey third-degree aggravated assault was not a crime of violence by examining the Model Penal Code and comparing it with the state statute); United States v. Esparza-Perez, 681 F.3d 228, 229–30 (5th Cir. 2012) (looking to the Model Penal Code, LaFave's *Substantive Criminal Law*, modern state codes, and dictionary definitions to derive the generic, contemporary meaning of "aggravated assault" in § 2L1.2); United States v. Gonzalez-Ramirez, 477 F.3d 310, 317–18 (5th Cir. 2007) (looking to the Model Penal Code, modern state codes, and LaFave's *Substantive Criminal Law* to derive the generic, contemporary meaning of "kidnapping" in § 2L1.2).

The Fifth Circuit has specifically recognized that burglary is a common law crime, thus requiring application of the common sense approach. See Rodriguez, 711 F.3d at 522 n.16 (providing a non-exhaustive list of common law offenses to include "murder, suicide, manslaughter, burglary, arson, robbery, larceny, rape, sodomy and mayhem . . . . Assault, battery, false imprisonment, libel, perjury, and intimidation of jurors . . . . Obstructing process, receiving stolen goods, conspiracy, perjury, bribery, extortion [categorized as offenses against public justice] . . . . Abduction . . . kidnapping [offenses against the persons of individuals] . . . . Malicious mischief, forgery . . . .") (citations omitted).

The process in this instance may be somewhat simpler to implement than it is in cases involving more obscure common law crimes as both the United States Supreme Court and the Fifth Circuit have addressed the treatment of prior burglary convictions under a number of different circumstances. Of principle interest to this Court is the Supreme Court's opinion in Taylor v. United States, 495 U.S. 575 (1990). In that case, the Supreme Court was called upon to determine whether Taylor's sentence under the Armed Career Criminals Act (hereinafter "ACCA") was proper. At issue was whether Taylor's second degree burglary conviction (under Missouri law) qualified as a proper predicate offense to an ACCA enhancement.

The import of Taylor to the instant case is found in the Supreme Court's discussion of what constitutes the generic meaning of burglary of a dwelling. The Court held:

> Although the exact formulations vary, the generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime. See LaFave & Scott supra, n. 3, § 8.13(a), p. 466 (modern statutes "generally require that the entry by unprivileged"); id., § 8.13(c), p. 471 (modern statutes "typically describe the place as a 'building' or 'structure' )"; id., § 8.13(e), p. 474 ("[T]he prevailing view in the modern codes is that an intent to commit any offense will do").

>This generic meaning, of course, is practically identical to the 1984 definition that in 1986, was omitted from the enhancement provision.[1]

Id. at 598 (emphasis added). Thus, the Supreme Court in Taylor recognized that the generic contemporary definition of burglary of a habitation included "remaining with the intent to commit a crime" as a manner in which one could commit the crime.

The Fifth Circuit has likewise recognized that "remaining in" is included in the generic, contemporary definition of burglary of a dwelling. While the Fifth Circuit has the occasion to deal with cases or statutes from a variety of jurisdictions, not surprisingly, one of the primary jurisdictions whose law the Fifth Circuit has had to interpret is Texas. The main focus in the Texas cases has been Sections 30.02(a)1 and (a)(3) of the Texas Penal Code. Recent Fifth Circuit cases have uniformly held that the former is a crime of violence while the latter is not. Section 30.02 states in pertinent part:

>A person commits an offense if, without the effective consent of the owner, the person:
>
>(1)   enters a habitation . . . not then open to the public, with intent to commit a felony . . . ; or
>
>(2)   remains concealed, with intent to commit a felony . . . in a . . . habitation; or
>
>(3)   enters a . . . habitation and commits or attempts to commit a felony . . . .

Tex. Penal Code § 30.02(a). Simply put, this Circuit has held that the deciding factor distinguishing subsections (a)(1) and (a)(3) is that the former requires a criminal intent before the act (i.e., the entry) begins while the latter does not. See, e.g., United States v. Castaneda, 740 F.3d 169 (5th Cir. 2013); United States v. Conde Castaneda, No. 13-10590, 2014 WL2210481

---

[1] The 1984 Congressional definition to which the Court refers is quoted as follows:
Burglary was defined in the statute itself as "any felony consisting of entering or remaining surreptitiously within a building that is property of another with intent to engage in conduct constituting a Federal or State offense." § 1202(c)(9).
Taylor, at 495 U.S. § 581. Obviously, this definition also contains the critical "remaining" language.

(5th Cir. May 28, 2014). There is a dearth of authority that discusses subpart (2) of Section 30.02(a), involving the "remaining language." Nevertheless, there are many number of Fifth Circuit cases that hold that Section 30.02(a) complies with the generic definition of burglary of a dwelling.[2] Certainly, subpart 2 requires an intent to commit a crime.

The importance of these discussions is evident when one views the language of the Oregon statute under which the Defendant was convicted, which states in pertinent part:

> 164.215  Burglary in the second degree
>
> (1)  Except as otherwise provided in ORS 164.255, a person commits the crime of burglary in the second degree if the person enters <u>or remains unlawfully in a building with intent to commit a crime therein</u>.

Or. Rev. Stat. S. 164.215 (2014) (emphasis added). Like the Texas statute, Oregon law requires that the "remaining" be unlawful and done with the intent to commit a crime. Clearly, if the Texas statute conforms to the generic definition of burglary, so does the Oregon statute. Notably, the Oregon statute is even narrower than the Texas Penal Code: it requires one to not only remain with the intent to commit a crime, but also that the "remaining" be unlawful. In contrast, Texas law only requires one to remain without effective consent.

The Fifth Circuit has found that similar statutes from other jurisdictions all of which contain a "remaining" clause fall within the contemporary, generic meaning of burglary of a dwelling. Specifically, the Court has found the law of the following states to constitute burglary of a dwelling: Arizona (<u>United States v. Torres</u>, 281 Fed Appx. 394 (5th Cir. 2008) (whose statutory language is virtually the same as that of Oregon)); Washington (<u>United States v. Ruiz Santos</u>, 340 Fed Appx. 222 (5th Cir. 2009) and <u>United States v. Guerrero</u>, 737 F.3d 976 (5th Cir.

---

[2] <u>United States v. Almazan-Martinez</u>, 370 Fed Appx. 439 (5th Cir. 2010); <u>United States v. Linares-Hernandez</u>, 284 Fed Appx. 128 (5th Cir. 2008); <u>United States v. Hernandez-Beltran</u>, 169 Fed. Appx. 195 (5th Cir. 2006); <u>United States v. Carranza-Munoz</u>, 185 Fed Appx. 398 (5th Cir. 2006); <u>United States v. Valdez-Medina</u>, 210 Fed Appx. 419 (5th Cir. 2006); <u>United States v. Valdez-Maltos</u>, 443 F.3d 910 (5th Cir. 2006); <u>United States v. Garcia-Mendez</u>, 420 F.3d 454 (5th Cir. 2005).

2013)); Georgia (United States v. Martinez Garcia, 625 F.3d 196 (5th Cir. 2010)); and Arkansas (United States v. Mendoza-Sanchez, 456 F.3d 479 (5th Cir. 2006)). There may be many more applicable cases, but these are cases in which the Fifth Circuit actually quoted the applicable burglary statute (each of which demonstratively had "remaining" as an additional means to violate the statute) and found that the statute complied with the generic, contemporary meaning of burglary of a dwelling.

> LaFave has described the difference between various jurisdictions.
>
> The requirement of an entry appears almost uniformly in modern burglary statutes. <u>While under some of these statutes only an "entry" of the requisite type will suffice, far more common today is the burglary statute which covers one who either enters or remains in the premises. This means, of course, that the requisite intent to commit a crime within need only exist at the time the defendant unlawfully remained within.</u>
>
> This common statutory expansion in the definition of burglary makes great sense. A lawful entry does not foreclose the kind of intrusion burglary is designed to reach, as is illustrated by the case of a bank customer who hides in the bank until it closes and then takes the bank's money. Moreover, this expansion forecloses any argument by a defendant found in premises then closed that he had entered earlier when they were open.

3 *Subst. Crim. L.* § 21.1(b) (2d ed.) (emphasis added). Interestingly, in his critique of the statutory revision of burglary, LaFave suggests the Model Penal Code may not be truly representative because its drafters have been restricting the scope of burglary because:

> [I]t is their desire to abolish the offense [of burglary] but realized that it was so embedded in the laws and minds of legislators that this would be impossible. The Model Penal Code approach is thus to narrow the offense considerably in order to bring its coverage back more closely to that of its common-law ancestor.

Id. at S.21.1(g).

9

Given the fact that: (1) the Supreme Court in <u>Taylor</u> described a federal statute with the "remaining" language as being the contemporary, generic definition; (2) the Fifth Circuit has impliedly held likewise in a number of cases; (3) the majority view favors the inclusion of "remaining" as an additional means to commit the offense in burglary statutes; (4) its inclusion clearly represents the modern view; and (5) the Model Penal Code, rather than providing the current generic meaning, instead represents the desire of its drafters that statutorily-based burglary be abolished, this Court holds that the generic, contemporary meaning of the Sentencing Guidelines' enumerated offense of burglary of a dwelling includes "remaining in a dwelling" as long as the underlying statute in question also requires that one remain with the unlawful intent to commit a crime.

Oregon, like Texas and numerous other jurisdictions, requires that the allegedly unlawful, surreptitious or unauthorized "remaining" in a dwelling be with the intent to commit a crime therein. Therefore, this Court finds that the elements of burglary under Oregon law fall within the conduct enumerated by the U.S. Sentencing Guidelines. Defendant's objection to the enhancement is hereby overruled.

Signed this 1st day of July, 2014.

Andrew S. Hanen
United States District Judge